AO 106A  (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### District of Montana

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Pink Samsung cell phone in a blue case, IMEI<br>356903443107334, a Blue Google cell phone Pixel,<br>G-2PW2100-021-C, and a Grey Samsung cell phone | )<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Case No. MJ 26- 66 -M-KLD |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A

located in the _____ District of _____ Montana _____ , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) | Manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance |

The application is based on these facts:
See attached Affidavit

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Joseph Travers
*Applicant's signature*

Joseph Travers, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ Telephone _____ *(specify reliable electronic means).*

Date: April 21, 2024

City and state: Msla, MT

Judge's signature

Hon. Kathleen L. DeSoto, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A WARRANT

Your affiant, Joseph Travers, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1)      I am a Special Agent with Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI).   I have been employed as a Special Agent with HSI since September of 2021. I am currently assigned to the Resident Agent in Charge Office, Kalispell, Montana. I have attended and graduated from the Criminal Investigator Training Program (CITP) and HSI Special Agent Training (HSISAT) at the Federal Law Enforcement Training Center in Glynco, Georgia.  This training included extensive instruction on Title 8, Title 18, Title 21, and Title 22 of the United States Code.  Prior to joining HSI, I received a Bachelor of Arts in Economics from Georgetown University in Washington, D.C. and was employed as a Criminal Investigative Analyst at Colorado's 5th Judicial District, District Attorney's Office.

2)      I have conducted physical and electronic surveillance, executed search warrants, reviewed documents of drug distributors, and interviewed and debriefed confidential sources of information and cooperating defendants regarding the function of drug distribution and drug smuggling organizations.

3)      The statements contained in this affidavit are based on information provided by fellow law enforcement officers, Task Force Officers, and on my experience as a Special Agent with HSI. Since this affidavit is submitted for the limited purpose of securing a search warrant, I have not included all facts known to me regarding this investigation. I have set forth facts that establish probable cause to believe that the defendants referred to in this investigation violated 21

U.S.C. 841 (a)(1). This affidavit is intended to show only that there exists sufficient probable cause for the requested warrant and does not portray all of my knowledge about this matter.

4)    Based on my background, training, and experience, I know that individuals who are involved in narcotics distribution often do the following:

    a. Use cellular telephones to arrange, coordinate, and monitor criminal activities including communicating with other distributors, suppliers, and customers. They also use these devices to communicate with these same individuals during counter surveillance activities, to warn other co-conspirators of the presence of law enforcement or other obstacles to their criminal plans;

    b. Use cellular telephones to facilitate the receipt of monies for payment for their role in the scheme, and to contact individuals who are involved in the illegal activities;

    c. Use all the communication technologies available within the particular cellular telephone, including voice messaging, texting, audio communication, direct dial, push-to-talk, emailing, internet access, speed dial, photo and video images, and contact lists containing contact information for their criminal associates to accomplish their criminal activities;

    d. Use multiple cellular telephones and often change cellular telephones to avoid detection by law enforcement;

    e. Use cellular telephones to store and maintain contact lists containing the names, nicknames, telephone numbers, e-mail addresses and social media profile identifiers of other criminal associates; communicate with other criminal associates by voice, e-mail and text message, including through Apple iMessage and Face Time, as well as third-party applications such as WhatsApp, Facebook Messenger, Instagram, Snapchat, and

BlackBerry Messenger; record, store and share with other criminal associates, including through the use of third-party applications, photographs, videos and other evidence of illicit activity such as photographs of vehicles, to ensure that the aliens find the vehicle that they are supposed to be transported by; and to utilize all available Global Positioning System ("GPS") functions, including navigation and mapping, which GPS data then may be recorded and stored.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

5)      The property to be searched consists of three (3) cellular phones. The first cellular phone to be examined, a Pink Samsung cell phone in a blue case, IMEI 356903443107334, will be referred to as "TARGET PHONE 1." The second cellular phone to be examined, a Blue Google cell phone Pixel, G-2PW2100-021-C, will be referred to as "TARGET PHONE 2." The third cellular phone to be examined, a Grey Samsung cell phone, SM-S166V, will be referred to as "TARGET PHONE 3." The TARGET PHONES were seized from the Lexus IS bearing Montana license plate SUPRME. The TARGET PHONES are stored in the HSI RAC office in Kalispell, Montana located at 2 Main Street, Kalispell, Montana 59901 and are sealed inside of Department of Homeland Security evidence bags with signed Form 6051S's (Custody Receipt for Seized Property and Evidence). The requested warrant would authorize the forensic examination of TARGET PHONES for the purpose of identifying electronically stored data particularly described in Attachment B (incorporated herein by reference).

## PROBABLE CAUSE

6)      On March 31, 2026, the United States Postal Inspection Service (USPIS) in Billings, Montana executed a search warrant on a package addressed to Perry Diiorio at 143 Rimrock Ct, Kalispell, MT

59901. The package was discovered to contain 1,398.45 grams of suspected methamphetamine (presumptive positive test).

7)      According to USPIS, during the transport of the package addressed to Diiorio, an individual with the email address "diiorio81@yahoo.com" was tracking the package through the USPS website.

8)      On March 31, 2026, at approximately 2:55 PM a white male with red hair (later identified as Timothy Cody-Ferguson) arrived at Top Shelf Botanicals Dispensary located at 2105 U.S. Hwy 2 E, Kalispell, MT 59901, in a 2013 White GMC Yukon bearing MT license plate DWM627. Ferguson entered the store and a few minutes later exited with Perry Diiorio. It is known that Diiorio works at that Top Shelf Botanicals location.

9)      Diiorio opened the passenger door of the gray 2006 Lexus IS bearing Montana license plate SUPRME and spent several minutes leaning inside of the passenger door of the Lexus. Eventually FERGUSON approached the Lexus and DIIORIO covertly handed him something to him from inside of the car. FERGUSON then got back into the white Yukon and departed. Based on my training and experience this interaction is typical of a narcotics hand-to-hand transaction.

10)     On April 2, 2026, investigators with USPIS, the Northwest Montana Drug Task Force (NWMDTF), and Homeland Security Investigations (HSI) conducted a controlled delivery of the package addressed to Diiorio. The methamphetamine was removed from the package and replaced with sham narcotics. The package was then placed in a parcel locker attached to the USPS community mailbox that serves residences on Rimrock Ct. The key to the parcel locker containing the package was placed in the mailbox belonging to 143 Rimrock Ct, Kalispell, MT 59901.

11)     On April 2, 2026, at approximately 9:45 AM, Diiorio stopped by the community mailboxes while driving the gray 2006 Lexus IS bearing Montana license plate SUPRME. Diiorio exited the

vehicle and retrieved his mail and the package from the community mailboxes on Rimrock Ct. Diiorio was taken into custody.

12) Diiorio was subsequently interviewed. He was read his Miranda warnings and stated, "I'm just a hand-er off-er" and "no one else had an address I guess." Diiorio then requested to have a lawyer present. The interview was concluded.

13) After Diiorio was taken into custody, a personal use amount of suspected methamphetamine (presumptive positive test) was found on his person. The suspected methamphetamine was discovered in Diiorio's pants pocket.

14) A federal search warrant was granted for the Lexus IS bearing Montan license plate SUPRME on April 7, 2026, and the vehicle was searched the same day. The search of the vehicle resulted in the discovery of approximately 27.4 grams of methamphetamine, 20.1 grams of suspected psylocibin mushrooms, a digital scale, the TARGET PHONES, bundles of unused small plastic bags, and drug paraphernalia.

    a. TARGET PHONE 1 was discovered on the passenger seat of the Lexus IS. TARGET PHONE 1 was observed on the passenger seat of the Lexus when DIIORIO was taken into custody on April 2, 2026. The phone was placed in a Faraday bag and returned to the passenger seat of the vehicle. The phone was not seized until the search warrant on the Lexus IS was executed. This was done to preserve any items of evidentiary value that may be on TARGET PHONE 1.

    b. TARGET PHONE 2 was discovered in the center console of the Lexus IS.

    c. TARGET PHONE 3 was discovered in the backpack in the trunk of the vehicle. Also found in the backpack was the methamphetamine, psylocibin mushrooms, bundles of unused small plastic bags, a digital scale, and drug paraphernalia.

15)     In my experience in conducting investigations of narcotics distribution, I have learned that it is common for drug distributors to possess a large number of plastic bags for distribution purposes and scales for the accurate weighing and packaging of narcotics.

16)     Narcotics distributors also use cellular telephones to arrange, coordinate, and monitor distribution activities.  Drug distributors will typically rely on cellular communications to find out the location of suppliers and customers.  Drug distributors will receive addresses, directions, names, and contact information for locations and individuals involved in the criminal activity.  It is also common for narcotics distributors to utilize multiple cell phones in the course of their distribution activities.  These electronic devices often contain electronic evidence of how the device has been used, what it has been used for, and who has used it.  This evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and other files and can be helpful in identifying other members of the distribution conspiracy.  In addition to being evidence of a crime, in cases of this sort, there is probable cause to believe that the cellular phone device was used as a means of committing offenses involving the transportation of illegal narcotics in violation of law and should be seized on that basis alone.

17)     The TARGET PHONES have remained in law enforcement custody and have been stored in such a manner that its contents, to the best of my knowledge, are in substantially the same state as when it first came into possession of law enforcement.

## **TECHNICAL TERMS**

18)     Wireless telephone: A wireless telephone (or mobile telephone or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually

contains a "call log," which records the telephone number, date and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

19) Digital camera: A digital camera is a camera that records pictures and video as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos. Most cell phones currently manufactured contain digital cameras as a standard feature.

20) Portable media player. A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock,

or games. Most cell phones currently manufactured contain portable media players as a standard feature.

21)     Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state. Most cell phones currently manufactured allow the use of the Internet as a standard feature. Further, most current cell phones allow the user to transmit electronic messages via standard email services or specially designed communication applications between parties.

22)     Based on my training, experience, research, consulting the manufacturer's advertisements and product technical specifications available online for these types of cellular phones, and based upon my discussions with experts, I know that the cellular phones which are the subject of this search warrant application most likely have capabilities that allow them to also serve as a radio communication transmitter, wireless telephone, GPS device, wireless internet connectivity, and text message capabilities, as these are generally standard features. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device; evidence of where such persons were when they possessed or used the device; evidence of who such persons were with when they possessed or used the device; evidence of persons with whom they communicated when they possessed or used the device; evidence of text, email, other electronic messaging applications and voice mail communications between the person who possessed or used the device and others. Navigational coordinates may also be transmitted to and/or from these devices to determine the user's location through a GPS application.

**ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

23)    Based on my knowledge, training, and experience, I know that electronic devices such as the phone involved in this case can store information for long periods of time. Similarly, things that have been viewed via or uploaded to the Internet are typically stored for some period of time on the device. Additionally, computer files or remnants of such files can be recovered even if they have been deleted. This is because when a person "deletes" the information on an electronic device, the data does not actually disappear, rather, the data remains on the storage medium until it is overwritten by new data. Information described in this affidavit can often be recovered by forensic computer experts using forensic tools and software.

24)    As further described in this affidavit and Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the cellular telephones were used, where it was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be on the cellular telephones because:

   a.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file, including frequency channels, text messages, video, or photographs.

   b.   Forensic evidence on a device can also indicate who has used or controlled the devices. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c.   A person with appropriate familiarity with how an electronic device works may, after examining the forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, when and where, sometimes it is necessary to establish that a particular thing is not present on a storage medium, for example, the absence of the entry of a name in a contact list as evidence that the user(s) of the cellular telephones, involved in this case, did not have a relationship with the party.

f. The examination of the cellular telephones may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant. Because this warrant only seeks permission to examine a device already in the possession of Homeland Security Investigations, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, there is probable cause for the Court to authorize execution of the warrant at any time in the day or night.

### CONCLUSION

25) I submit that this affidavit supports probable cause for search warrants authorizing the examination of the TARGET PHONES, described in Attachment A, and to seek the items

described in Attachment B. I believe that TARGET PHONES contain evidence relating to the commission of a criminal offense, which is in violation of Title 21, United States Code, Section 841(a)(1), Possession with Intent to Distribute Methamphetamine, as well as constitutes property designed for use, intended for use, or used in committing the aforementioned crime.

Respectfully submitted,

/s/ Joseph Travers

Joseph Travers
Special Agent
Homeland Security Investigations

SUBSCRIBED and SWORN to me by telephone pursuant to Federal Rules of Criminal Procedure Rule 4.1 this ___21st___ day of April, 2026.

Honorable Kathleen L. DeSoto
United States Magistrate Judge
District of Montana

ATTACHMENT A
ITEMS TO BE SEARCHED


The three (3) cellular phone to be examined are a Pink Samsung cell phone in a blue case, IMEI 356903443107334, a Blue Google cell phone Pixel, G-2PW2100-021-C, and a Grey Samsung cell phone, SM-S166V, seized from the Lexus IS bearing Montana license plate SUPRME.  These phones are stored in the HSI RAC office in Kalispell, Montana located at 2 Main Street, Kalispell, Montana 59901 and are sealed inside of Department of Homeland Security evidence bags with signed Form 6051S's (Custody Receipt for Seized Property and Evidence).

## ATTACHMENT B

## ITEMS TO BE SEIZED

1.    Data and/or digital files stored on or accessed through the three (3) cellular phones (as described in Attachment A) relating to violations of 21 U.S.C. § 841, wherever it may be stored or found, specifically including:

    a.  Lists of contacts and related identifying information;

    b.  Agreements made, directions and instructions received and sent, as well as dates, places, and amounts of specific transactions;

    c.  Types, amounts of money obtained, received, exchanged, deposited, withdrawn, or delivered as well as dates, places, exchange rates, and amounts of specific transactions;

    d.  Any information related to sources of money or distribution activity data (including names, addresses, phone numbers, or any other identifying information);

    e.  All bank records, checks, credit card bills, account information, and other financial records.

2.  Electronic correspondence stored on or accessed through the cellular phone relating to narcotics distribution, to include emails and attached files, text messages, instant messaging logs, and information relating to the purchase and tracking of parcel shipments.

3.  Information related to incoming calls, outgoing calls, missed calls, and duration of calls stored on or accessed through the cellular phone.

4.  Contact lists stored on or accessed through the cellular phones, to include telephone and email contact names, telephone numbers, addresses, and email addresses.

5.  Evidence of persons who used, owned, or controlled the cellular phones.

6.  Logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, instant messaging logs, photographs, electronic correspondence, and telephone contact lists stored on or accessed through the cellular phone.